**LIMNEXUS, LLP**
Phillip F. Shinn, Esq. (SBN 112051)
Phil.Shinn@limnexus.com
Sara M. Goldsmith, Esq. (SBN 322655)
Sara.Goldsmith@limnexus.com
707 Wilshire Boulevard, 46th Floor
Los Angeles, California 90017
Tel: (213) 955-9500 | Fax: (213) 955-9511

**ROCK IP, PLLC**
Robert D. Wells, DC State Bar No. 1005334 (Pro Hac Vice)
rob@rock-ip.com
Robert Werner, MA State Bar No. 680221 (Pro Hac Vice)
rob.werner@rock-ip.com
1200 G Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 793-5557

**CHO LAW GROUP, LLC**
Kenneth K. Cho, NJ State Bar No. 017951990 (Pro Hac Vice)
kcho@cholawgrp.com
22 Paris Avenue, Suite 110 D
Rockleigh, NJ 07647Tel: (201) 822-0032 | Fax: (201) 822-0033

*Attorneys for Defendants*
MONTY ST. JOHN
REYNALDO RAMON

LIMNEXUS LLP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

APOLLO INFORMATION SYSTEMS CORP.,

Plaintiff,

v.

MONTY ST. JOHN and REYNALDO RAMON,

Defendants.

Case No. 5:26-cv-00523-SVK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDENTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. Procedural History .......... 2

B. Statements Made in Apollo's FAC ..........

1. Apollo Acknowledges its Trade Secrets are Not Secret and are Publicly Available. .......... 3

2. The FAC Does Not Allege Facts Establishing Misappropriation or Improper Acquisition of its Trade Secrets .......... 4

3. Monty St. John is a Cybersecurity Industry Veteran .......... 4

4. Facts and Allegations Related to Defendants' Employment Agreements with Apollo .......... 5

III. LEGAL STANDARD .......... 6

A. Motion To Dismiss for Failure to State a Claim .......... 6

B. Trade Secret Misappropriation under the DTSA .......... 7

1. Elements of a Civil Action for Misappropriation of Trade Secrets Under the DTSA .......... 7

C. Breach of Contract .......... 8

D. Unjust Enrichment .......... 8

E. Money Had and Received .......... 9

F. Breach of Fiduciary Duty .......... 9

G. Civil Conspiracy .......... 9

H. Declaratory Judgment .......... 9

IV. ARGUMENTS .......... 9

A. Apollo Fails to State a Claim for Trade Secret Misappropriation under the DTSA .......... 10

1. Apollo Fails to Identify Any Protectable Trade Secret .......... 10

a) Apollo's Alleged Personas do Not Constitute Protectable

Trade Secrets ....................11

b) Apollo Creates an Irreconcilable Contradiction Regarding its Personas ....................12

c) Apollo Has Not Established That it Took Reasonable Measures to Protect Its Personas ....................12

d) Processing and Analyzing Raw Data is a Generic Functional Description, Not a Trade Secret ....................13

e) Commercially Licensed Data Obtained From Third-Party Providers Cannot Constitute Apollo's Trade Secret ....................13

f) Aggregation of Publicly Available and Commercially Licensed Data Into a Data Lake Does Not Constitute a Trade Secret ....................13

g) Output Categories and Analytical Methods Are Pleaded at an Impermissible Level of Abstraction ....................14

2. Apollo Fails to Allege Any Misappropriation ....................14

a) Apollo Fails to Allege What Was Taken ....................16

b) Apollo's Allegations Center on Access and Credentials, Not Trade Secrets ....................16

c) Apollo's Allegations are Internally Contradictory ....................16

d) Ramon's Alleged Conduct is Indefinite ....................17

e) Apollo Fails to Plead a DTSA Interstate Commerce Nexus ....................17

B. Apollo Fails to Establish Any Breach of Defendants' Employment Agreements ....................18

C. Apollo Fails to Establish Unjust Enrichment ....................18

D. Apollo Fails to Establish Money had and Received ....................20

E. Apollo Fails to Establish Breach of Fiduciary Duty ....................20

F. Apollo Fails to Establish Civil Conspiracy ....................21

G. Declaratory Judgment ....................21

V. CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Case Law**


*Alta Devices, Inc. v. LG Elecs., Inc.*
343 F. Supp.3d 868 (N.D. Cal. 2018) ....................8, 10, 13

*AlterG, Inc. v. Boost Treadmills LLC*
388 F.Supp.3d 1133 (N.D. Cal. 2019) ....................6, 8, 11

*Ashcroft v. Iqbal*
556 U.S. 662 L. Ed. 2d 868 (2009) ....................6

*Durell v. Sharp Healthcare*
183 Cal. App. 4th 1350 Cal. Rptr. 3d 682 (2010) ....................8

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*
642 F. Supp. 2d 1012 (N.D. Cal. 2009) ....................9

*In re Facebook, Inc., PPC Advert. Litig.*
282 F.R.D. 446 (N.D. Cal. 2012) ....................8

*InteliClear LLC v. ETC Global Holdings, Inc.*
978 F.3d 653 (9th Cir. 2020) ....................10, 11

*Laatz v. Zazzle, Inc.*
682 F. Supp. 3d 791 (N.D. Cal. 2023) ....................20

*Levitt v. Yelp! Inc.*
765 F.3d 1123 (9th Cir. 2014) ....................6, 7

*Lopez v. Bank of Am., N.A., 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020)* ....................1

*Melchior v. New Line Prods., Inc.*
106 Cal. App. 4th 779 Cal. Rptr. 2d 347 (2003) ....................8

*Mosier v. Stonefield Josephson, Inc.*
815 F.3d 1161 (9th Cir. 2016) ....................9

*Oakwood Labs, LLC v. Thanoo*
999 F.3d 892 (3d Cir. 2021) ....................7

_RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc._
No. C 23-04804 WHA, 2024 WL 4876947, *2 (N.D. Cal. Nov. 23, 2024) ........................................17

_Town & Country Linen Corp. v. Ingenious Designs LLC_
556 F. Supp. 3d 222 (S.D.N.Y. 2021).........................................................................................13, 14

_UCAR Tech. (USA) Inc. v. Yan Li_
No. 5:17-CV-01704-EJD, 2017 WL 6405620, *9 (N.D. Cal. Dec. 15, 2017).......................................8

_Vasquez v. Los Angeles ("LA") Cnty._
487 F.3d 1246 (9th Cir. 2007).............................................................................................................7

_WalkMe Ltd. v. Whatfix, Inc._
No. 23-CV-03991-JSW, 2024 WL 3364019, *7 (N.D. Cal. 2024) ........................................................10

_Walsh v. West Valley Mission Community College Dist._
66 Cal. App. 4th 1532, 78 Cal.Rptr.2d 725 (Cal. App. 6th Dist. 1998)................................................8

_Williams & Cochrane, LLP v. Rosette_
631 F. Supp. 3d 884 (S.D. Cal. 2022)..................................................................................................9

_World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc._
No. 13-CV-03455-WHO, 2014 WL 1411249, *2 (N.D. Cal. Apr. 11, 2014) .......................................8

**Statues**

18 U.S.C. § 1836(b)(1).........................................................................................................7
18 U.S.C. § 1836(b)(3).........................................................................................................7
18 U.S.C. § 1839(2) .............................................................................................................7
18 U.S.C. § 1839(3) .............................................................................................................7
18 U.S.C. § 1839(5) ..........................................................................................................7, 8
28 U.S.C. § 2201 .............................................................................................................9, 21
Fed.R.Civ.P. 12(b)(6)...................................................................................................10, 20, 21

LIMNEXUS LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Apollo Information Systems Corp.'s ("Apollo") First Amended Complaint ("FAC") against its former employees Monty St. John ("St. John") and Reynaldo Ramon ("Ramon") (collectively referred to as "Defendants"), is still legally flawed and factually deficient. It represents an unprincipled response to former employees, attempting to transform Apollo's internal business breakdown into a federal trade secrets case. It fails. Every count of Apollo's FAC should be dismissed.

Stripped of its rhetoric, the FAC reflects a cybersecurity company that terminated the very employees responsible for developing, operating, and managing its threat intelligence systems, and now seeks, through retaliatory litigation, to reconstruct its own understanding of those systems by trying to assign blame to Defendants. In doing so, Apollo relies on impermissibly broad and circular descriptions of its alleged "trade secrets," coupled with speculation, conclusory assertions, and internally contradictory allegations about what information existed, how it functioned, and who controlled it.

The FAC fails to plausibly allege trade secret misappropriation. Although the FAC alleges that Defendants made unauthorized copies of its alleged trade secrets, sold those copies to entities they owned and controlled, and incorporated the stolen information into competing products (*see*, ECF 55, ¶¶62-72), it fails to identify what specific files were copied, when the copying occurred, by what method, what specific information was transferred to which entity, or what specific features of the CTOS Product appear in any competing product. Apollo's new misappropriation allegations are conclusory characterizations of alleged conduct that are not entitled to the presumption of truth, and the remaining factual content: that Defendants worked for Apollo, had access to its systems, and later operated businesses in the cybersecurity space; is equally consistent with lawful conduct as with misappropriation. Apollo's FAC fails to plausibly state a claim for trade secret misappropriation.

Apollo's own allegations confirm that its business depends on publicly available data, open-source intelligence, and commercially licensed information. Yet Apollo attempts to elevate these

inputs into protectable trade secrets without articulating any concrete, non-public, or proprietary information entitled to protection.

Apollo's remaining claims for unjust enrichment, money had and received, breach of fiduciary duty, civil conspiracy, and declaratory judgment are wholly derivative of these deficient theories and therefore fail as a matter of law.

1. Because these defects are legal, not factual, and because Apollo's own allegations foreclose the existence of a protectable trade secret or actionable misappropriation, are insufficient to support the allegations, and fail to state claims upon which relief may be granted, all claims of Apollo's FAC must be dismissed under Rule 12(b)(6).

## II. STATEMENT OF FACTS

### A. Procedural History

Apollo filed the Complaint in the present action on January 16, 2026 (Complaint, ECF 1), along with motions for a Temporary Restraining Order ("TRO") (ECF 5), and to Expedite and Preserve Discovery (ECF 4). Following expedited briefing on the motion for a TRO, a hearing was held on February 2, 2026. *See*, Minute Entry at ECF 35. The Court denied Apollo's Motion for a TRO and granted-in-part the Motion for Expedited Discovery.

Defendants filed a Motion to Dismiss Complaint for Failure to State a Claim (ECF 53) pursuant to Fed.R.Civ. P. 12(b)6 and a Proposed Order (ECF 53-1) on March 24, 2026. Rather than oppose Defendants' Motion to Dismiss, Apollo filed its First Amended Complaint on April 7, 2026 (ECF 55) and withdrew its Motion for Preliminary Injunction (*see*, Notice of Withdrawal of its Pending Motion for Preliminary Injunction, ECF 54).

### B. Statements Made in Apollo's FAC

Apollo describes itself as a cybersecurity services company that collects publicly available information and data from open sources. *See*, ECF 55, p. 11. Apollo alleges that it uses "undercover personas" and other commercial intelligence data from the dark web to advise clients on the nature of cybersecurity threats and help fortify defenses and neutralize threats. *See*, *id*. at ¶¶12-16. Apollo further pleads that "[t]he dark web provides a digital, <u>open-air black market</u> for cybercriminals to advertise, sell, and purchase illegally obtained information." *Id*. at ¶14 (*emphasis added*).

Apollo admits that it "navigates the dark web by utilizing proprietary personas, contracted management resources, and data obtained from commercial intelligence providers and other open-source data repositories." *Id*. at ¶16. Apollo then combines the information obtained from publicly available sources and providers into a pool of data that it refers to as a "data lake." *See*, *id*. at ¶18.

### 1. *Apollo Acknowledges its Trade Secrets are Not Secret and are Publicly Available.*

In the First Cause of Action in the FAC, Apollo alleges that its trade secrets are embodied in a counter threat operations system (CTOS Product) and defines "Asserted Trade Secrets" as allegedly consisting of six features. *See*, ECF 55, ¶55.

The first feature is a compilation of over 1,000 undercover personas open or public to others in the dark web. *See*, ECF 55, ¶55(a).

The second feature is collecting information from the cybercriminals obtained from the personas and the data collection methodologies. *See*, ECF 55, ¶55(b). Apollo admits that some of the personas may be more than 17 years old. *See, id*. This means that these old persons existed prior to the acquisition of CDI by Apollo and may be public domain or the property of the Defendants.

The third feature is described as "processing, interpreting, and analyzing raw data into function data." ECF 55, ¶55(c).

The fourth feature is collecting commercial intelligence collection data which is not generally known. *See*, ECF 55, ¶55(d). This is an oxymoron. If its commercial data, then its available to the public.

The fifth feature in aggregating data from the commercial intelligence collection data and collected using the persona into the data lake. *See*, ECF 55, ¶55(e).

The sixth feature is processing, interpreting and analyzing the data. *See*, ECF 55, ¶55(f).

Apollo's FAC acknowledges that it uses its personas to navigate the dark web in order to gather information made available in an open-air black market where cybercriminals advertise, sell, and purchase information. *See*, *id.* at ¶¶12-16. Apollo also acknowledges that it uses "data obtained from commercial intelligence providers and other open-source data repositories," which it compiles into a pool of raw data it refers to as its "data lake." *See*, *id.* at ¶ 57.

**2. *The FAC Does Not Allege Facts Establishing Misappropriation or Improper Acquisition of its Trade Secrets***

Apollo's FAC alleges that Sam Stover, Apollo's Director of Technical Operations, was tasked with meeting St. John and Ramon to conduct their exit interviews because St. John's health was deteriorating. *See*, *id*. at ¶¶30-34.

Apollo stated that Sam Stover met with St. John on December 4, 2025, and "asked to be provided with all Apollo assets being used from St. John's data collection activities, [and] St. John told Stover that he had been provided with 'all of the things that you just mentioned that belong to Apollo.'" *Id*. Apollo also inferred that Stover was able to access the password locker because they claimed that "[St. John] created a password locker that contained unhelpful and unusable information." *Id.* Apollo admits that it had access to the password locker. *Id.*

In addition to meetings with St. John and Ramon from December 2 - 4, 2025, Apollo acknowledges that St. John created a "password locker" that Apollo had access to and reviewed. *See*, *id.* at ¶¶33. Apollo makes contradictory statements that St. John failed to provide login credentials to a "password locker." *See*, *id*. However, Apollo states that Stover checked the password locker that St. John created and found "that [it] contained unhelpful and unusable information …." Apollo does not allege that the password locker it has access to lacked any of the data it believed was contained in an original password locker it claims St. John changed his email address for. *See*, *id*.

**3. *Monty St. John is a Cybersecurity Industry Veteran***

Defendant Monty St. John is a Cybersecurity Expert with an impressive history of innovation and prior work. The FAC describes St. John as a cybersecurity industry veteran with more than 2 decades of experience in the cybersecurity and digital forensics industry. *See*, ECF 55, ¶21. The FAC makes multiple references to St. John's Employment Agreement, which was attached as Exhibit A-1 to the Motion for a TRO[1]. *See*, ECF 55, ¶¶46-51. More importantly, Apollo intentionally omits that fact that St. John's executed Employment Agreement includes a detailed thirteen (13) page list labeled Exhibit A that expressly identified "a complete list of all inventions, discoveries, ideas, improvements, trade secrets, formulae, techniques, original works of authorship, mask works,

[1] Apollo incorporates the employment agreements by reference at ECF 55, ¶46-51.

processes and know-how relating to the subject matter of my employment . . . that have been made or conceived or first reduced to practice by me alone or jointly with others **prior** to my employment by Apollo Information systems Corp."[2] ECF 5-1, Exhibit A-1 to Motion for a TRO, p. 8 (*emphasis added*). Apollo makes self-serving allegations that Northumbria, DataSchism, and CyberGestalt are the property of Apollo (ECF 55, ¶51), without any regard to the prior work, inventions and software that is openly identified and listed in Exhibit A of St. John's Employment Agreement.

Monty St. John's association with Sultrani has always been known to Apollo and is even openly listed in St. John's list of prior inventive work (Exhibit A of the employment agreement) under "Owned Training Courses (Monty St John/Sultrani, LLC)." Exhibit A of St. John's Employment Agreement, attached as Exhibit A to Defendants' Motion to Dismiss Amended Complaint.

#### 4. *Facts and Allegations Related to Defendants' Employment Agreements with Apollo*

The FAC references and relies on numerous provisions of Employment Agreements that were executed between Apollo and the Defendants in support of Apollo's trade secret and tort claims. *See*, FAC, ¶¶45-51. Apollo does not attach the Employment Agreements to the FAC, but they were incorporated into the original Complaint and also included as Exhibits to Apollo's Motion for a Temporary Restraining Order. (See, ECF 5-1).

Defendants each signed Employment Agreements with Apollo that established their title and duties as employees with Apollo. *See* ECF 55, ¶45, ECF 5-1, Exhibit 1 to Motion for TRO, § 1; ECF 5-1, Exhibit 2 to Motion for TRO, § 1. St. John's title was Senior Director of Intelligence. ECF 55, ¶21. Ramon's title was Threat Intelligence Analyst. *Id*. The FAC fails to plead that Ramon's duties included any management related duties.

Defendants' Employment Agreements contain an "Inventions" section that recites the requirements for inventions to be the property of Apollo. *See* ECF 55, ¶50. The Inventions section of the employment agreements requires that for inventions to be the sole property of Apollo they must

[2] A true and correct copy of St. John's Employment Agreement, including the thirteen-page Exhibit A disclosing his pre-existing intellectual property, is attached hereto as Exhibit A and incorporated herein by reference

be: 1) "made or conceived by the Employee, either alone or in conjunction with others;" 2) "during the term of the Employee's employment with Apollo;" and 3) "relate to or result from the actual or demonstrably anticipated business, work or research of the Company, (b) result, to any extent, from use of Apollo premises or property, or (c) are suggested by any task assigned to the Employee or any work performed by the Employee for the Company." *Id*.

The title for Section G of the FAC states: "St. John and Ramon violated their contractual duties to maintain the confidentiality of Apollo's confidential information and trade secrets." ECF 55, p. 12. Lines 1-2. The FAC includes no facts or allegations as to how the Defendants allegedly violated their confidentiality obligations. *Id*. The Second Cause of Action states: "St. John and Ramon each breached their respective employment agreements by misappropriating Apollo's Confidential Information and violating their respective agreements to maintain the confidentiality [sic] Apollo's Confidential Information." ECF 55, ¶80.

Apollo's FAC pleads a seventh cause of action seeking a declaratory judgment under 28 U.S.C. § 2201 that Apollo is the sole or joint owner of Northumbria Intelligence Platform, DataSchism, CyberGestalt, Sensemaking LLM, and "any related Inventions." ECF 55, ¶¶99-104. This cause of action fails at the threshold for multiple independent reasons as explained below.

## III. LEGAL STANDARD

### A. Motion To Dismiss for Failure to State a Claim

Rule 12(b)6 of the Federal Rules of Civil Procedure provides that a defense of failure to state a claim upon which relief may be granted must be asserted in a responsive pleading by motion before pleading. *See*, Fed.R.Civ.P. 12(b)6.For a plaintiff to survive a Rule 12(b)(6) motion to dismiss, his factual allegations "must . . . suggest that the claim has at least a plausible chance of success." *AlterG, Inc. v. Boost Treadmills LLC,* 388 F.Supp.3d 1133, 1141 (N.D. Cal. 2019), *citing*, *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014). The complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Where a complaint pleads facts that are

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'" *Id.*

"In reviewing such a motion, we accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party. We have consistently emphasized, however, that "conclusory allegations of law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss." *Vasquez v. Los Angeles ("LA") Cnty.*, 487 F.3d 1246 (9th Cir. 2007).

The Ninth Circuit has outlined a two-step process for evaluating pleadings against this standard. "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Levitt*, 765 F.3d at 1135 (citations omitted).

**B. Trade Secret Misappropriation under the DTSA**

***1. Elements of a Civil Action for Misappropriation of Trade Secrets Under the DTSA***

The DTSA requires a plaintiff to demonstrate (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]" *id*. § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id*. § 1839(5). *See id*. § 1836(b)(1), (3) (recognizing a federal private cause of action for trade secret misappropriation and establishing remedies). *Oakwood Labs, LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).

There are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent. 18 U.S.C. § 1839(5). *Oakwood Laboratories,* 999 F.3d at 907-08.

Further, this Court has held that to state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc.,* 388 F.Supp.3d.1133, 1144 (N.D. Cal. 2019)*, citing, Alta Devices, Inc. v. LG Elecs., Inc.,* 343 F. Supp.3d 868, 877 (N.D. Cal. 2018) (citation omitted); *see* 18 U.S.C. § 1839(5) (defining "misappropriation" in the context of trade secrets).

**B. Breach of Contract**

Under California law, a prima facie claim for breach of contract has four elements: 1) the existence of a contract, 2) the plaintiff's performance or excuse of non-performance, 3) defendant's breach, and 4) damages to the plaintiff from defendant's breach. *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 455 (N.D. Cal. 2012), *citing, Walsh v. West Valley Mission Community College Dist.*, 66 Cal. App. 4th 1532, 1545, 78 Cal.Rptr.2d 725 (Cal. App. 6th Dist. 1998).

**C. Unjust Enrichment**

The California Courts do not recognize a cause of action for Unjust Enrichment[3]. "[T]here is no cause of action in California for unjust enrichment." *World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*, No. 13-CV-03455-WHO, 2014 WL 1411249, *2 (N.D. Cal. Apr. 11, 2014), citing, *Melchior v. New Line Prods., Inc.,* 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682 (2010) (same). Rather than a theory of recovery, unjust enrichment is "the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior*, 106 Cal. App. 4th at 793 (citations omitted). A quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights. *See, UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-CV-

---

[3] The elements of a claim for unjust enrichment of (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law; have been cited by the California Courts and were been taken from the Delaware Chancery Court opinion in *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998). *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2008 WL 2561957, *12 (N.D. Cal. June 25, 2008), *citing, Zoran Corp. Derivative Litig,.* 511 F. Supp.2d 986, 1018 (N.D. Cal. 2007). Notably, the absence of a remedy provided by law is still a required element for a claim of unjust enrichment under the Delaware standard.

01704-EJD, 2017 WL 6405620, *9 (N.D. Cal. Dec. 15, 2017), *citing, Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016).

**D. Money Had and Received**

In order to plead a claim for money had and received, Apollo must demonstrate "(1) the statement of indebtedness in a certain sum, (2) the consideration, *i.e.*, goods sold, work done, etc., and (3) nonpayment." *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020).

**E. Breach of Fiduciary Duty**

To plead a claim for breach of fiduciary duty, Apollo must establish (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *See, Williams & Cochrane, LLP v. Rosette*, 631 F. Supp. 3d 884 (S.D. Cal. 2022), *aff'd*, No. 23-55166, 2024 WL 1651666 (9th Cir. Apr. 17, 2024).

**F. Civil Conspiracy**

In order to plead a claim for civil conspiracy, Apollo must show: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy. *See, Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012 (N.D. Cal. 2009).

**G. Declaratory Judgment**

In order to plead a claim for declaratory judgment, Apollo must show an actual case or controversy and a legal relationship between the parties. *See*, 28 U.S.C. § 2201.

## IV. ARGUMENTS

Apollo's FAC fails to plead facts sufficient to support any of its asserted seven causes of action.

Although framed as a multi-count complaint, Apollo's claims rest on the same flawed foundation: vague, overbroad, and internally inconsistent allegations about undefined "trade secrets," unspecified misconduct, sweeping assertions of ownership to programs and data untethered to the governing agreements and clearly identified pre-existing intellectual property assets, and conclusory legal arguments. Rather than alleging concrete facts, Apollo relies on abstract and categorical allegations.

Under Fed.R.Civ.P. 12(b)(6), such conclusory and speculative pleading cannot survive. Stripped of their mere labels and legal conclusions, Apollo's FAC fails to plausibly state any claim for relief.

Accordingly, and as set forth below, each of Apollo's causes of action should be dismissed.

**A. Apollo Fails to State a Claim for Trade Secret Misappropriation under the DTSA**

Apollo's DTSA claim fails at the threshold. The FAC does not plausibly allege (1) the existence of a protectable trade secret, (2) misappropriation, or (3) any qualifying nexus to interstate commerce. Each defect independently warrants dismissal.

***1. Apollo Fails to Identify Any Protectable Trade Secret.***

To state a DTSA claim, a plaintiff must identify its alleged trade secrets with sufficient particularity to distinguish them from matters of general knowledge in the field and to permit the defendant to ascertain at least the boundaries within which the secret lies. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (holding that a plaintiff must describe its trade secrets with particularity sufficient to separate them from general knowledge in the field and to allow defendants to identify the boundaries of the alleged secret). The Ninth Circuit has made clear that a plaintiff must specifically identify the trade secrets at issue; a categorical or conclusory description does not suffice. *InteliClear LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (holding that a plaintiff must specifically identify its alleged trade secrets rather than rely on categorical or conclusory descriptions). A plaintiff must plead facts that describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge or of the special knowledge of those skilled in the trade. *WalkMe Ltd. v. Whatfix, Inc.*, No. 23-CV-03991-JSW, 2024 WL 3364019, *7 (N.D. Cal. 2024) (dismissing DTSA claim where plaintiff failed to describe its alleged trade secrets with particularity sufficient to distinguish them from general industry knowledge), citing *InteliClear*, 978 F.3d at 658. Apollo fails this standard as to each of its six alleged trade secret sub-items.

Apollo attempts to identify its Asserted Trade Secrets as six features of its Counter Threat Operations System ("CTOS Product"). ECF 55, ¶55. Each of the identified features is legally insufficient. They do not identify specific, non-public information entitled to protection. Instead, they

describe general categories of activity common to any threat intelligence or data processing firm and offer conclusory characterizations of legal status in place of the factual particularity the DTSA requires. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (finding DTSA claim insufficient where the complaint described only broad categories of information rather than identifying specific trade secrets and characterizing such descriptions as "placeholders for a trade secret" rather than an identification of one). Each sub-item fails for specific reasons.

Sub-items (a) and (b) concern Apollo's undercover personas. Sub-item (a) alleges a "compilation of comprehensive detailed information needed to operate over 1,000 undercover personas," including credentials, history, languages, operation sites, and personal background. ECF 55, ¶55(a). Sub-item (b) alleges the collection of information from cybercriminals through those personas, along with the individual data collection methodologies for each. ECF 55, ¶55(b). These sub-items fail as a matter of law.

a) *Apollo's Alleged Personas do Not Constitute Protectable Trade Secrets.*

Personas deployed on the dark web to interact with cybercriminals are not trade secrets. A trade secret must derive its economic value from not being generally known to, or readily ascertainable by, others who could obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3). Information that is necessarily disclosed to others through its ordinary use cannot satisfy that requirement. *InteliClear LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (holding that a plaintiff asserting trade secret protection must specifically identify information that qualifies as secret, not merely information it regards as valuable or confidential).

Apollo's own FAC establishes that its personas operate in a manner fundamentally inconsistent with trade secret protection. The FAC describes the dark web as "a digital, open-air black market for cybercriminals to advertise, sell, and purchase illegally obtained information." ECF 55, ¶14. Apollo acknowledges that its personas are deployed into that open-air marketplace to interact directly with participants in it. ECF 55, ¶¶12-13. The FAC further alleges that ***the personas collect information*** by interacting with cybercriminals, which necessarily means that the personas are visible to, and known by, the criminals they transact. ECF 55, ¶55(b). A persona that operates openly in a

marketplace, transacts with participants in that marketplace, and derives its value from the trust and credibility it has established within the criminal community it infiltrates is not secret from that community. It is, by Apollo's own description, a participant in an open market.

b) *Apollo Creates an Irreconcilable Contradiction Regarding its Personas.*

Apollo simultaneously alleges that it "owns and possesses" over 1,000 undercover personas as a component of its proprietary CTOS Product, (ECF 55, ¶¶55, 55(a)), and that St. John locked Apollo out of its own systems by changing the login credentials to the password locker that contains Apollo's "personas and other highly confidential encrypted data." ECF 55, ¶¶3, 66. These two allegations cannot simultaneously be true. If Apollo owns and possesses the personas as operational features of its proprietary CTOS Product, then Apollo has access to those personas through the CTOS Product independent of any third-party password locker, and St. John's alleged alteration of the locker's credentials would not deprive Apollo of access to its own product. If, on the other hand, Apollo's access to its personas is entirely dependent on the password locker it claims is in St. John's possession, the personas are not features of a proprietary product that Apollo owns and possesses. Apollo cannot plausibly maintain both positions, and the irreconcilable contradiction between them independently forecloses any coherent trade secret claim based on sub-items (a) and (b).

c) *Apollo Has Not Established That it Took Reasonable Measures to Protect Its Personas.*

Even if the personas could qualify as trade secrets, which they cannot for the reasons stated above, Apollo independently failed to plead that it took reasonable measures to protect them. Apollo identifies storing confidential information in its "secure, encrypted password locker" as a primary reasonable measure taken to protect its alleged trade secrets. ECF 55, ¶56. But if the personas are operational features of the CTOS Product that exist and are accessible outside the password locker, as Apollo's ownership allegations in ECF 55, ¶55(a) imply, then the password locker is not the relevant protection mechanism for the personas in their operational context, and Apollo has pleaded no specific security measure directed at protecting them as publicly deployed instruments operating on the dark web.

d) *Processing and Analyzing Raw Data is a Generic Functional Description, Not a Trade Secret.*

Sub-item (c) alleges "processing, interpreting, and analyzing raw data into functional data" as a trade secret. ECF 55, ¶55(c). This is a functional description of what every data analytics system does. It identifies no specific algorithm, model, methodology, or implementation. A plaintiff asserting trade secret protection in a data processing method must identify the specific, non-public features of that method that distinguish it from general industry practice. *Alta Devices*, 343 F. Supp. 3d at 881. Apollo provides none of that here. The allegation that Apollo "processes, interprets, and analyzes" raw data is a description of a category of activity, not of a protectable trade secret.

e) *Commercially Licensed Data Obtained from Third-Party Providers Cannot Constitute Apollo's Trade Secret.*

Sub-item (d) alleges the collection of commercial intelligence data from third-party providers as a trade secret, on the ground that the data is "not generally known" because providers vet subscribers and cap the number of queries. ECF 55, ¶55(d). This sub-item is self-defeating. Apollo acknowledges that the data comes from commercial providers who supply it to any qualified cybersecurity firm. Information that is commercially available to subscribers in an industry, even on a restricted basis, cannot constitute a trade secret in the hands of a subscriber. *See Alta Devices*, 343 F. Supp. 3d at 877 (holding that information publicly available or commercially licensed to others cannot constitute a trade secret without more). Apollo has no protectable trade secret in data it licenses from a third party.

f) *Aggregation of Publicly Available and Commercially Licensed Data into a Data Lake Does Not Constitute a Trade Secret.*

Sub-item (e) alleges that the aggregation of persona data and commercial intelligence data into a data lake constitutes a trade secret. ECF 55, ¶55(e). Compilation or aggregation of data from public or commercially available sources does not independently constitute a trade secret absent identification of specific, non-public processing or transformation that adds independent value. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 270 (S.D.N.Y. 2021) (holding that a plaintiff's failure to identify its alleged trade secrets with specificity left defendants

unable to defend and the court unable to assess the merits of the claim). Apollo does not allege what specific transformation the data undergoes in the data lake, what makes the resulting compilation non-obvious, or how the combined data lake differs from what a competitor could independently assemble from the same commercial sources. The conclusory statement that the data lake "has never been made public and has never been published," ECF 55, ¶55(e), merely asserts whatever Apollo requires to survive a motion to dismiss without providing facts that would support it.

g) *Output Categories and Analytical Methods Are Pleaded at an Impermissible Level of Abstraction.*

Sub-item (f) alleges "processing, interpreting, and analyzing the proprietary datasets that identify patterns in its data lake to trace illegally obtained information back to its source" and to produce "Criminal Automation" data, "DNS Misconfiguration" data, and "Ops Data" as deliverables. ECF 55, ¶55(f). Like sub-item (c), this sub-item describes a functional output category without identifying any specific analytical method, algorithm, or implementation. The named output categories, "Criminal Automation," "DNS Misconfiguration," and "Ops Data," are labels, not descriptions. Apollo provides no information about what these outputs contain, how they are generated, or what distinguishes Apollo's analytical methods from those generally known in the threat intelligence industry. Without that specificity, sub-item (f) is a placeholder, not a trade secret.

In the absence of any factual identification of the specific information for which Apollo claims trade secret protection, Apollo has pled nothing more than that it operates in the threat intelligence industry, collects data, and analyzes it. As the court observed in *Town & Country Linen*, 556 F. Supp. 3d at 270, where a plaintiff fails to identify the specific information claimed as a trade secret, the defendant has no way to know, short of guessing, exactly what information is claimed, and thus has no way of arguing that such information was publicly available or not entitled to trade secret protection. That is precisely the position in which Apollo's allegations leave defendants here. Apollo's First Cause of Action fails to identify any protectable trade secret and must be dismissed.

**2. *Apollo Fails to Allege Misappropriation.***

Even assuming *arguendo*, a trade secret was adequately pleaded, which it was not, Apollo fails to allege any misappropriation of any trade secret.

Apollo's allegations of misappropriation in the FAC raise a significant question about Apollo's own account of events that undermines the narrative Apollo seeks to construct. Apollo alleges that Sam Stover was dispatched to Washington in December 2025 because St. John's health was deteriorating and Apollo needed to ensure business continuity and knowledge transfer from St. John. ECF 55, ¶¶30-31. Yet despite that stated purpose, Stover conducted extensive meetings not only with St. John but also with Ramon, who had no reported health concerns and whose operational role as a Threat Intelligence Analyst did not independently justify the same knowledge transfer rationale. ECF 55, ¶32. If Apollo's sole concern at that time was securing St. John's knowledge due to his health, there was no apparent reason to conduct parallel interviews with Ramon.

Apollo offers no explanation for why Ramon's participation was necessary or appropriate given the stated rationale for the trip. Apollo does not allege that Ramon possessed institutional knowledge that was separately at risk or that there was any independent operational reason to subject him to the same exit-style interviews conducted with St. John. The FAC is silent on why Stover met with Ramon at all. That silence is telling. If the purpose of the trip was genuinely limited to addressing St. John's health-related knowledge transfer, there was no apparent reason to conduct parallel interviews with Ramon. Apollo cannot construct an elaborate joint misappropriation theory against both Defendants while offering no coherent explanation for why both Defendants were subjected to the same investigative process during a trip that Apollo characterizes as having been prompted solely by one Defendant's health concerns.

Apollo's recitation of facts in support of their misappropriation allegations are conclusory, speculative allegations that are not entitled to the presumption of truth and cannot survive a motion to dismiss. Stripped of their conclusory characterizations, the factual content of these paragraphs amounts to nothing more than the undisputed facts that Defendants worked for Apollo, had authorized access to its systems during their employment, and subsequently operated businesses in the same industry; facts that are equally consistent with lawful conduct as with misappropriation and that do not plausibly allege a DTSA violation.

///

///

a) *Apollo Fails to Allege What Was Taken*

Apollo does not identify any specific trade secret that was acquired, any instance of disclosure, or any use by Defendants. Instead, it relies on conclusory assertions that Defendants "misappropriated" information. Apollo's allegation is simply insufficient. Rather, Apollo defines the broad, categorical features of the CTOS Product as "Asserted Trade Secrets" and claims that Defendants made an unauthorized copy (ECF 55, ¶65), changes the login information for the third-party password locker (ECF 55, ¶66); and that Ramon acquired the trade secrets from St. John (ECF 55, ¶67).

b) *Apollo's Allegations Center on Access and Credentials, Not Trade Secrets*

Apollo's primary factual allegation is that St. John changed login credentials to a "password locker." *Id*. at ¶66. However, Apollo acknowledges that the "password locker" in question, and the email address St. John allegedly changed, do not constitute trade secrets. *Id*. at ¶¶36, 66. The password locker contains passwords.

Paragraph 66 of the FAC attempts to plead that the password locker contained "personas and other highly confidential encrypted data" but paragraph 12 of the FAC pleads that the commercial intelligence collection data is fed into the CTOS Product, and not the password locker. *See*, ECF 55, ¶¶12 & 66.

Apollo contradicts itself and admits that Apollo had access to that password locker because it "contained unhelpful and unusable information." *Id*. at ¶33.

Thus, the alleged conduct concerns access control, not misappropriation of trade secrets, which Apollo lost due to its own incompetence.

c) *Apollo's Allegations are Internally Contradictory*

Apollo makes the contradictory statements that "Neither Ramon nor St. John has, or ever had, Apollo's express or implied consent to use its trade secrets," and that "Apollo provided Ramon access to its trade secret information for the sole purpose of his use in connection with his employment with Apollo." *Id*. at ¶67, 60.

///

///

The FAC further alleges that St. John failed to provide access to alleged trade secret information, while admitting that Apollo personnel accessed and reviewed the password locker. *Id*. at ¶33.

These contradictions undermine plausibility and preclude a reasonable inference of misappropriation.

d) *Ramon's Alleged Conduct is Indefinite*

Apollo's FAC uses the conjunction "and/or" to describe conduct that is attributed to Ramon, but these allegations are indefinite and leave Ramon guessing as to whether he is alleged to have partaken such conduct. For example, the FAC alleges that "St. John **and/or** Ramon . . . sold an unauthorized and unlicensed copy of the Asserted Trade Secrets and that "St. John **and/or** Ramon incorporated unique features . . . into Northumbria Intelligence Platform, DataSchism, and CyberGestalt. *See*, ECF 55, ¶¶64, 65 (*emphasis added*), respectively. Ramon is literally left guessing as the nature of the claims being asserted against him in the FAC.

Apollo then alleges that Ramon "misappropriated" trade secrets solely because he "acquired" them from St. John. *Id.* at ¶67. But Apollo also alleges that Ramon was still employed at the time it alleges that St. John changed his email address. *See id*. at ¶¶36, 41. Apollo's FAC fails to recognize that Ramon remained employed by Apollo until December 23, 2025, and thus properly had access to Apollo's alleged trade secrets as part of his employment when St. John is alleged to have misappropriated them. *See id*. at ¶41. Apollo does not allege any facts showing improper acquisition, disclosure, or use of its alleged trade secrets by Ramon.

e) *Apollo Fails to Plead a DTSA Interstate Commerce Nexus*

The DTSA requires that the trade secrets relate to a product or service used in interstate commerce. Apollo alleges only that its "confidential information" is used across state lines, not any identified trade secret. *Id*. at ¶61. On its face, the FAC appears to confuse confidential information with a trade secret. A trade secret must consist of confidential information that is not publicly known, but confidential information may not be a trade secret. See, *RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*, No. C 23-04804 WHA, 2024 WL 4876947, *2 (N.D. Cal. Nov. 23, 2024). Apollo's FAC fails to assert that any identifiable trade secret was used in interstate commerce, limiting its

allegations only to generalized "confidential information" having crossed state lines, which is insufficient to establish a DTSA claim. *See id.*

**B. Apollo Fails to Establish Any Breach of Defendants' Employment Agreements**

Apollo's breach of contract claim hinges entirely on its allegation that the Defendants misappropriated Apollo's alleged trade secrets. *See,* ECF 55 at ¶78-80. As discussed in Sections IV.A.1 and IV.A.4, *supra*, Apollo fails to plead that it possessed trade secrets or that the Defendants took or misappropriated any confidential information or trade secret. Apollo is therefore unable to sustain a claim for breach of contract. Even assuming *arguendo*, that a contract existed and Apollo performed under the contract, there is no evidence pleaded of a breach and resulting damage.

Further, Apollo fails to plead that it collected any invention disclosures or feedback from Defendants that would support a claim Defendants made any inventions while employed by Apollo that would trigger Section 7 of the employment agreement. Rather, the pleadings in the FAC improperly claim ownership of the prior inventions disclosed by St. John and now claim that they are Apollo's inventions. *See*, ECF 55 at ¶51.

Apollo has not properly pleaded that Apollo possessed trade secrets nor that any alleged trade secrets were misappropriated so that Apollo is not able to show that the Defendants breached their employment agreements. Apollo thus fails to state a claim upon which relief may be granted and its cause of action for breach of contract must be dismissed under Rule 12(b)(6).

**C. Apollo Fails to Establish Unjust Enrichment**

If there is a valid, express contract exists covering the same subject matter, California courts do not allow an unjust enrichment claim.

Apollo has already pleaded breach of contract based on its employment agreements with St. John and Ramon. Since Apollo has pleaded the existence of a contract, they cannot double dip and also maintain a cause of action for unjust enrichment. Apollo's unjust enrichment claim must be dismissed under Rule 12(b)(6) on this basis alone.

Notwithstanding the deficiency of its claims as a matter of law, Defendants address the Apollo's of claims of unjust enrichment.

Apollo's claim of unjust enrichment is based on a claim that Defendants "unlawfully inducing Apollo to purchase 'subscriptions' for products Apollo already owned." *ECF 55, at ¶84.*

As discussed at length in §A *supra*, Apollo's FAC fails to establish the existence or misappropriation of any trade secret by Defendants.

Apollo's allegation of ownership of products is a conclusory allegation of law not supported by any allegations of sufficient fact. The support Apollo has established is the recitation of the "Inventions" section of Defendants' Employment Agreements. *See,* ECF 55 at ¶50. However, this section clearly states that there are requirements that must be met for inventions to be the property of Apollo. The Inventions section of the employment agreements requires for inventions to be the sole property of Apollo they must be: 1) "made or conceived by the Employee, either alone or in conjunction with others;" 2) "during the term of the Employee's employment with Apollo;" and 3) "relate to or result from the actual or demonstrably anticipated business, work or research of the Company, (b) result, to any extent, from use of Apollo premises or property, or (c) are suggested by any task assigned to the Employee or any work performed by the Employee for the Company." *See*, Exhibit 1 of Apollo's Motion for TRO, ECF 5-1, § 7.

Apollo's FAC fails to allege or establish any of these requirements have been met with respect to any alleged claim of ownership of any product. Apollo has not pleaded any facts sufficient to establish that any product in question was made or conceived by St. John during the term of his employment. St. John has a long history of developing cybersecurity tools and threat intelligence platforms that predates his employment with CDI and Apollo. Despite Apollo's misleading allegations, St. John made extensive disclosure of the cybersecurity software he had developed before his employment with Apollo. Employment Agreement of St. John, Exhibit A-1 of Apollo's Motion for a TRO, ECF 5-1.

Apollo has failed to properly plead Unjust Enrichment because the claim is inconsistent with its allegation of breach of contract, and because Apollo fails to establish the existence or misappropriation of any trade secrets or the ownership of any products it purchased subscriptions to from St. John.

Apollo thus fails to state a claim upon which relief may be granted and its cause of action for unjust enrichment must be dismissed under Rule 12(b)(6).

**D. Apollo Fails to Establish Money had and Received**

Apollo's pleading for money had and received relies on an allegation that Defendants had fraudulently induced Apollo to purchase products or services. Apollo has not established all of the requirements for showing fraudulent inducement. For a claim of fraud, Apollo must show (1) the suggestion of a fact that is not true; (2) committed by a party to the contract, or with his connivance; (3) with intent to deceive or induce him to enter into the contract. *See, Laatz v. Zazzle, Inc.*, 682 F. Supp. 3d 791, 812 (N.D. Cal. 2023).

Apollo fails to allege any fact sufficient to establish that St. John did not believe he owned the products at issue nor that he had any intent to deceive Apollo regarding ownership of the product. As previously set forth, Apollo has not even established that they own the products at issue.

On the contrary, Apollo's own admissions show their awareness of St. John's affiliation with the products at issue. Apollo stated it was aware, as early as December 2024, that the payment for Northumbria was made to Sultrani, and that Sultrani was known to be associated with St. John. *See*, ECF 55 at ¶23. Despite recognizing that it had purchased software from an entity affiliated with St. John, Apollo does not allege that it took any action for over a year, to establish ownership or seek any remediation and continued to use the product for a year. In fact, Apollo continued to rely on St. John's recommendations for the purchase of services. ECF 55, at ¶25. Apollo's continued acquiescence to St. John's affiliation with the products purchase clearly demonstrate a lack of deception as to Apollo's purchase of any software subscriptions.

Apollo has not properly pleaded that Defendants are indebted to plaintiff and that Defendants have committed any fraudulent actions. Apollo thus fails to state a claim upon which relief may be granted and its cause of action for money had and received must be dismissed under Rule 12(b)(6).

**E. Apollo Fails to Establish Breach of Fiduciary Duty**

Apollo fails to plead that Ramon was an officer or manager with Apollo who had a fiduciary duty. Apollo's statement that Ramon had a fiduciary duty is a conclusory allegation of law and Apollo fails to plead any statements of fact. Ramon's employment agreement does not list any duties

that would lead to a conclusion that Ramon held a management position. *Employment Agreement of Reynaldo Ramon*, Exhibit 2 to Motion for a TRO, ECF 5-1. Therefore, Apollo has failed to show the existence of a fiduciary duty.

In support of the second element, breach, Apollo makes vague allegations of breach of fiduciary duty relating to usurped opportunities, misappropriation of trade secrets, and disclosure of confidential information. Apollo has not identified any usurped opportunities with any particularity. Apollo has not identified the misappropriation of any trade secret, as previously set forth above nor any breach of confidentiality with respect to confidential information, as previously set forth above.

Apollo has not properly pleaded that that Defendants had a fiduciary duty and Apollo has not alleged any actual breaches of fiduciary duty with particularity. Apollo thus fails to state a claim upon which relief may be granted and its cause of action for breach of fiduciary duty must be dismissed under Rule 12(b)(6).

**F. Apollo Fails to Establish Civil Conspiracy**

Apollo fails to plead that Defendants had any agreement to commit wrongful acts (*i.e.*, formation of a conspiracy). Apollo has not established any wrongful acts were even committed because, as previously set forth, Apollo's claims of misappropriation of any trade secret, any breach of fiduciary duty, and claim of fraudulent inducement are entirely without merit. Apollo has failed to properly plead civil conspiracy by making only conclusory allegations of law unsupported by the established facts. Therefore, the cause of action for civil conspiracy should be dismissed for failure to state a claim.

**G. Declaratory Judgment**

Apollo's FAC adds a seventh cause of action seeking a declaratory judgment under 28 U.S.C. § 2201 that Apollo is the sole or joint owner of Northumbria Intelligence Platform, DataSchism, CyberGestalt, Sensemaking LLM, and "any related Inventions." ECF 55, ¶¶99-104. This new cause of action fails at the threshold for multiple independent reasons.

A claim for declaratory judgment requires the existence of an actual, substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. 28 U.S.C. § 2201. Apollo pleads no facts establishing any actual

controversy regarding ownership of any of the named products. The FAC does not allege that Defendants have asserted ownership over any of these products in any forum, that Defendants have taken any action to exclude Apollo from using them, or that any dispute over ownership has arisen between the parties in any concrete and immediate form. Apollo's declaratory judgment count rests entirely on the same conclusory "upon information and belief" allegations that pervade the rest of the FAC, without identifying a single specific fact that would give rise to a justiciable ownership dispute.

Apollo's declaratory judgment count also invokes Section 7 of the employment agreements as the basis for its ownership claim, alleging "upon information and belief" that Defendants made and conceived the subject matter of each named product during their employment with Apollo and that the products relate to or result from Apollo's business, result from use of Apollo's property, or were suggested by tasks assigned to Defendants. ECF 55, ¶¶24, 28, 29, and 101. These are the three conjunctive requirements of Section 7, and Apollo pleads none of them with any supporting facts. Apollo does not identify any specific work performed by Defendants during their employment that gave rise to any of the named products, any Apollo property or resources that were used in their development, or any task assigned to Defendants from which any product arose. Reciting the criteria of Section 7 and asserting "upon information and belief" that they are satisfied is precisely the type of formulaic recitation of elements that does not survive a motion to dismiss under *Iqbal*. Moreover, as set forth above, Apollo's declaratory judgment count conspicuously omits any reference to the thirteen-page Exhibit A to St. John's employment agreement, which discloses the pre-existing intellectual property from which DataSchism, CyberGestalt, and Northumbria were developed. Apollo cannot plausibly claim ownership of products under Section 7 while concealing from the Court the contractual disclosure that removes those products from Section 7's scope entirely.

Most strikingly, Apollo's declaratory judgment count seeks a declaration of ownership over a product called "Sensemaking LLM" that does not appear anywhere else in the FAC. ECF 55, ¶¶100, 101, 103, and 104. The FAC contains no description of what Sensemaking LLM is, no allegation of when it was created, no allegation of who created it, no allegation of how it relates to Apollo's business, and no factual basis of any kind for asserting that Apollo owns it or has any interest in it. Apollo does not allege that it has ever used, purchased, or even encountered Sensemaking LLM in

any context. The product is introduced in the FAC solely as a target of the declaratory judgment count, without a single supporting factual allegation anywhere in the pleading.

A claim for declaratory judgment of ownership over a product that is not described, not defined, and not connected to any facts alleged in the complaint does not present a justiciable controversy and cannot survive a motion to dismiss. To permit Apollo to claim ownership over an entirely undefined product through a declaratory judgment count unsupported by any factual allegations would render the pleading requirements of Rule 8 and the plausibility standard of *Iqbal* meaningless.

## V. CONCLUSION

For the foregoing reasons, Plaintiff has failed to state any claim upon which relief can be granted. The FAC does not plausibly allege the existence of any protectable trade secret, fails to identify any actionable misappropriation, and does not establish a breach of any specific contractual provision. Plaintiff's remaining claims are derivative of these deficient theories and likewise fail as a matter of law.

Accordingly, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss each of Plaintiff's causes of action, including:

1. Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836);
2. Breach of Contract;
3. Unjust Enrichment;
4. Money Had and Received;
5. Breach of Fiduciary Duty;
6. Civil Conspiracy; and
7. Declaratory Judgment.

Dated: April 21, 2026

Respectfully submitted,

By: /s/ Robert D. Wells

ROBERT D. WELLS
*rob@rock-ip.com*
ROBERT A. WERNER
*Rob.werner@rock-ip.com*
**ROCK IP, PLLC**

*Attorneys for Defendants*
MONTY ST. JOHN
REYNALDO RAMON