**LIMNEXUS LLP**
Phillip F. Shinn, Esq. (SBN 112051)
Phil.Shinn@limnexus.com
Sara M. Goldsmith, Esq. (SBN 322655)
Sara.Goldsmith@limnexus.com
707 Wilshire Boulevard, 46th Floor
Los Angeles, California 90017
Tel: (213) 955-9500 | Fax: (213) 955-9511

**ROCK IP, PLLC**
Robert D. Wells, DC State Bar No. 1005334 (Pro Hac Vice)
rob@rock-ip.com
Robert Werner, MA State Bar No. 680221 (Pro Hac Vice)
rob.werner@rock-ip.com
1200 G Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 793-5557

**CHO LAW GROUP, LLC**
Kenneth K. Cho, NJ State Bar No. 017951990 (Pro Hac Vice)
kcho@cholawgrp.com
22 Paris Avenue, Suite 110 D
Rockleigh, NJ 07647Tel: (201) 822-0032 | Fax: (201) 822-0033

*Attorneys for Defendants*
MONTY ST. JOHN
REYNALDO RAMON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APOLLO INFORMATION SYSTEMS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MONTY ST. JOHN and REYNALDO RAMON,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:26-cv-00523-PCP (VKD)<br><br>**DEFENDANTS MONTY ST. JOHN AND REYNALDO RAMON'S ANSWER AND AFFIRMATIVE DEFENSES, AND DEFENDANT MONTY ST. JOHN'S COUNTERCLAIMS, TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. P. Casey Pitts |



LIMNEXUS LLP

Defendants Monty St. John ("St. John") and Reynaldo Ramon ("Ramon") (together, "Defendants") answer the First Amended Complaint (Dkt. 55) ("FAC") filed by Plaintiff Apollo Information Systems Corp. ("Apollo") as follows. Each numbered paragraph below responds to the same-numbered paragraph of the FAC. Under Fed. R. Civ. P. 8(b)(3), Defendants deny every allegation of the FAC, including its introduction, headings, unnumbered paragraphs, footnotes, and prayer for relief, except those specifically admitted below. Defendants repeat the FAC's headings for reference only. The Court has dismissed the Fifth Cause of Action as to Ramon and the Seventh Cause of Action as to "Sensemaking LLM" (Dkt. 82); no response is required to allegations to the extent they concern those dismissed claims, and to the extent a response is required, Defendants deny them.

## RESPONSE TO SPECIFIC ALLEGATIONS

## I. INTRODUCTION

1. Defendants admit they are former employees of Apollo and that Apollo purports to seek relief against them. Defendants deny the remaining allegations in Paragraph 1.

2. Defendants admit that, in performing their jobs, they had access to Apollo systems and information. Defendants admit that each signed an employment agreement with Apollo that requires the employee to "comply with Apollo's policies and procedures to the extent that such policies and procedures are not inconsistent with the provisions of this Agreement" and provides for the return of certain property and materials, and refer the Court to the agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 2.

3. Defendants admit that each of them resigned from Apollo. Defendants admit that St. John erased the data on his Apollo-issued laptop before returning it to Apollo, consistent with the intelligence team's standard procedure for departing members, that he gave Apollo the laptop password when Apollo asked for it, and

that St. John changed the login e-mail address, but not the password, of his personal 1Password account. Defendants deny that St. John's personal 1Password account is or was Apollo's property or Apollo's "password locker." Except as expressly admitted, Defendants deny the allegations in Paragraph 3.

4. Defendants admit that on December 10, 2025, St. John changed the login e-mail address, but not the password, of his personal 1Password account, and that on the same date Apollo executives met with Ramon. Defendants deny that, on December 10, 2025, St. John's personal 1Password account held any Apollo credential or confidential information. Defendants admit Ramon's statement at that meeting to the extent stated in their response to Paragraph 39. Defendants admit that St. John used the name North Tools while employed by Apollo, that North Tools LLC was formed on December 30, 2025, and that Ramon became a partner in North Tools on January 1, 2026. Except as expressly admitted, Defendants deny the allegations in Paragraph 4.

5. Defendants admit that Apollo purports to seek relief against them. Defendants lack knowledge or information sufficient to form a belief about the condition of Apollo's business, and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 5.

## II. PARTIES

6. Upon information and belief, Defendants admit the allegations contained in Paragraph 6.

7. Defendants admit the allegations in Paragraph 7.

8. Defendants admit the allegations in Paragraph 8.

## III. JURISDICTION AND VENUE

9. Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that the Court has subject-matter jurisdiction over Apollo's claim under the Defend Trade Secrets Act under

LIMNEXUS LLP

28 U.S.C. § 1331, and supplemental jurisdiction over Apollo's remaining claims under 28 U.S.C. § 1367, and deny the remaining allegations in Paragraph 9.

10. Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required, Defendants do not contest personal jurisdiction in this Court for purposes of this action only. Defendants admit that the employment agreements identified by Apollo contain the language quoted in Paragraph 10, and refer the Court to those agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 10.

## IV. BACKGROUND FACTS

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore deny them.

12. Neither Defendant recalls representing to Apollo that they deployed more than 1,000 undercover personas, and on that basis Defendants deny that allegation. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12, and therefore deny them.

13. Defendants deny the allegations in Paragraph 13.

14. Defendants admit the allegations in the second and third sentences of Paragraph 14. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 14, and therefore deny them.

15. Defendants admit that sellers on dark-web marketplaces use coded terms and other obfuscating techniques. Defendants deny the remaining allegations in Paragraph 15.

16. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore deny them.

17. Defendants deny that commercial intelligence collection data is not generally known or not readily ascertainable. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and therefore deny them.

18. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore deny them.

19. Defendants admit that in June 2022 Apollo acquired Cyber Defenses, Inc. ("CDI"), that Ramon was a CDI employee at that time, and that each of them was then based in Texas. Except as expressly admitted, Defendants deny the allegations in Paragraph 19.

20. Defendants admit that each of them became an Apollo employee, and that Ramon did so in connection with Apollo's acquisition of CDI. Defendants lack knowledge or information sufficient to form a belief about what CDI assets Apollo acquired, and therefore deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 20.

21. Defendants admit that St. John has more than 20 years of experience in the cybersecurity and digital forensics industries, that Ramon has more than 10 years of experience as a researcher, and that they performed well. Defendants admit that St. John served as Senior Director of Intelligence and was paid a base salary of $309,000.00 in 2025. Defendants admit that Ramon served as a Threat Intelligence Analyst and, from 2024, as a Principal Security Researcher, and was paid a base salary of $200,000.00 in 2025. Except as expressly admitted, Defendants deny the allegations in Paragraph 21.

22. Defendants deny the allegations in Paragraph 22.

23. Defendants admit that St. John presented Northumbria to Apollo as part of a formal evaluation process initiated by Dave Tyson to replace Apollo's Threat Intelligence Platform. Defendants admit that, with Dave Tyson's approval, Apollo purchased an auto-renewing annual subscription to Northumbria for $50,000 per year by company credit card on March 13, 2025, through northtools.org, on an invoice issued by Sultrani, and that Sultrani is associated with

St. John. Defendants admit that St. John later told Apollo it no longer needed a subscription to Northumbria. Except as expressly admitted, Defendants deny the allegations in Paragraph 23.

24. Defendants aver that Northumbria is the result and culmination of work identified on Exhibit A to St. John's 2024 employment agreement, and on that basis deny that the subject matter of Northumbria was made or conceived during the term of either Defendant's employment with Apollo within the meaning of Section 7 of the employment agreements, and deny that Northumbria relates to or resulted from Apollo's business, work, research, or property, or was suggested by any task assigned or work performed for Apollo, within the meaning of that section. Defendants deny that they concealed St. John's affiliation with Northumbria, and refer the Court to the cited webpage for its contents. Defendants deny the remaining allegations in Paragraph 24.

25. Defendants admit that DataSchism and CyberGestalt were among the products that Apollo personnel proposed and discussed at an October 2025 meeting in Dallas, that John Watters approved them at that meeting, and that they were then evaluated with Dave Tyson and submitted to Apollo's accounting department. Neither St. John nor Ramon had authority or the means to purchase software for Apollo; Apollo accounting personnel made the purchases. Defendants admit that St. John was among those who proposed DataSchism and CyberGestalt at that meeting. Defendants admit that on November 4, 2025, CyberGestalt issued invoices billed to iCounter for $81,000 for a CyberGestalt "Gestalt - Researcher" subscription and $47,790 for a DataSchism subscription, and that those invoices were paid. Except as expressly admitted, Defendants deny the allegations in Paragraph 25.

26. Defendants admit that St. John registered the domains northtools.org on December 20, 2024, cybergestalt.ca on September 15, 2025, and dataschism.ca on October 31, 2025, and that North Tools LLC was formed on December 30, 2025.

Defendants admit that St. John used the name North Tools while employed by Apollo, as stated in their response to Paragraph 4. Defendants admit that Apollo did not sign a separate written agreement for DataSchism or CyberGestalt, and aver that Apollo subscribed to each on the terms of the November 4, 2025 invoices it paid. Defendants deny that no point of contact was listed for those subscriptions; each invoice listed CyberGestalt's mailing address and its e-mail address, cybergestalt@cybergestalt.org. Defendants lack knowledge or information sufficient to form a belief about what information Apollo sought, and why, and therefore deny those allegations. Defendants deny that any asset related to North Tools, Northumbria, DataSchism, or CyberGestalt is Apollo's property. Except as expressly admitted, Defendants deny the allegations in Paragraph 26.

27. Defendants deny the allegations in Paragraph 27.

28. Defendants aver that DataSchism is the result and culmination of work identified on Exhibit A to St. John's 2024 employment agreement, and on that basis deny that the subject matter of DataSchism was made or conceived during the term of either Defendant's employment with Apollo within the meaning of Section 7 of the employment agreements, and deny that DataSchism relates to or resulted from Apollo's business, work, research, or property, or was suggested by any task assigned or work performed for Apollo, within the meaning of that section. Defendants deny that they induced Apollo to subscribe to DataSchism; Apollo personnel selected it at meetings in Dallas in October 2025. Defendants refer the Court to the cited webpage for its contents. Defendants deny the remaining allegations in Paragraph 28.

29. Defendants aver that CyberGestalt is the result and culmination of work identified on Exhibit A to St. John's 2024 employment agreement, and on that basis deny that the subject matter of CyberGestalt was made or conceived during the term of either Defendant's employment with Apollo within the meaning of Section 7 of the employment agreements, and deny that CyberGestalt relates to



LIMNEXUS LLP

LIMNEXUS LLP

or resulted from Apollo's business, work, research, or property, or was suggested by any task assigned or work performed for Apollo, within the meaning of that section. Defendants deny that they induced Apollo to subscribe to CyberGestalt; Apollo personnel selected it at meetings in Dallas in October 2025. Defendants refer the Court to the cited webpage for its contents. Defendants deny the remaining allegations in Paragraph 29.

30. St. John admits that on or about November 26, 2025, he advised John Watters and Dave Tyson that he had suffered a multiple-sclerosis episode and that his health was failing. Ramon lacks knowledge or information sufficient to form a belief about that communication, and therefore denies those allegations. Defendants admit that Sam Stover traveled to Washington to meet with them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30, and therefore deny them.

31. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore deny them.

32. Defendants admit that Stover met with them during December 2-4, 2025, and that during that period Stover met with St. John in three meetings conducted by video conference. Except as expressly admitted, Defendants deny the allegations in Paragraph 32.

33. Defendants admit that during the December 4, 2025 meeting, Stover asked St. John to provide Apollo assets, that St. John told Stover he had been provided with "all of the things that you just mentioned that belong to Apollo," and that St. John called certain of Stover's questions "accusatory." Except as expressly admitted, Defendants deny the allegations in Paragraph 33.

34. Defendants admit the allegations in Paragraph 34.

35. Defendants admit that St. John administered his personal 1Password account and could change its login credentials. Defendants admit that from 2017 until December 10, 2025, St. John used a CDI e-mail address as the login e-mail

address of his personal 1Password account. St. John opened that account on April 22, 2016, before his employment with CDI or Apollo, and has always paid for it himself. Defendants deny that St. John's personal 1Password account is or ever was Apollo's property or Apollo's "password locker." Defendants lack knowledge or information sufficient to form a belief about how Apollo stores its data, and therefore deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 35.

36. Defendants admit that on December 10, 2025, St. John changed the login e-mail address of his personal 1Password account to his sultrani.com e-mail address, and deny that he changed its password. Defendants lack knowledge or information sufficient to form a belief as to what Apollo learned on December 10, 2025, and about any notification Dave Tyson received, and therefore deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 36.

37. Defendants admit that St. John received the payments described in their responses to Paragraphs 23 and 25. Defendants admit that in March 2026, Apollo's annual subscription to Northumbria auto-renewed, resulting in a $50,000 charge to the card Apollo originally submitted with its annual subscription, and that, at Apollo's request, St. John refunded the full $50,000. Defendants admit that on December 4, 2025, St. John entered into a KeLa subscription in the name of Northumbria Tools and asked KeLa to transfer iCounter's KeLa account to Max Tomayko. Defendants admit that Tomayko was an intern at CDI, that he is no longer employed by Apollo, that he is a contractor for North Tools, and that he lives in Washington. Except as expressly admitted, Defendants deny the allegations in Paragraph 37.

38. Defendants admit that St. John continues to operate North Tools LLC. Defendants lack knowledge or information sufficient to form a belief about Apollo's acquisition of another data collection company, and therefore deny that

allegation. Except as expressly admitted, Defendants deny the allegations in Paragraph 38.

39. Defendants admit that on December 10, 2025, Apollo executives met with Ramon at Apollo's office in Dallas, Texas, and that during the meeting, Ramon stated, mistakenly, that he and St. John were "business partners." Except as expressly admitted, Defendants deny the allegations in Paragraph 39.

40. Defendants admit that on December 4, 2025, St. John entered into a KeLa subscription in the name of Northumbria Tools. Defendants deny that Ramon confirmed that any KeLa license was secured on which to build DataSchism or CyberGestalt. Defendants deny that DataSchism or CyberGestalt was built on, or uses, data obtained through any KeLa subscription, including Apollo's, and deny that they used Apollo's KeLa subscription to create any product or to sell Apollo its own information or property. Except as expressly admitted, Defendants deny the allegations in Paragraph 40.

41. Defendants admit that Ramon resigned from Apollo on December 23, 2025, effective immediately. Except as expressly admitted, Defendants deny the allegations in Paragraph 41.

42. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and therefore deny them.

43. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore deny them.

44. Defendants lack knowledge or information sufficient to form a belief about when the application was submitted, and therefore deny that allegation. Defendants admit St. John's December 4, 2025 actions concerning KeLa to the extent stated in their response to Paragraph 37. Defendants deny the remaining allegations in Paragraph 44.

45. Defendants admit that St. John and Ramon signed employment agreements, and refer the Court to those agreements for their complete terms.

LIMNEXUS LLP

Except as stated in their responses to Paragraphs 2 and 46-51, Defendants lack knowledge or information sufficient to form a belief about the measures Apollo uses to protect its information, and therefore deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 45.

46. Defendants admit that Section 6 of each of their employment agreements is titled "Confidential Information"; that Section 6.1 of each defines "Confidential Information" as information that "(a) derives economic value from not being known to the general public or others who can obtain economic value from its disclosure or use and (b) is the subject of reasonable efforts on the part of Apollo to maintain its confidentiality"; and that Section 6.1 lists "information regarding Apollo's business and marketing strategies" among the examples of what Confidential Information "may include." Defendants refer the Court to the employment agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 46.

47. Defendants admit that Section 6.2 of each of Defendants' employment agreements contains the language quoted in Paragraph 47, and refer the Court to the employment agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 47.

48. Defendants admit that Section 6.3 of each of Defendants' employment agreements contains the language quoted in Paragraph 48, and refer the Court to the employment agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 48.

49. Defendants admit that Section 6.4 of St. John's 2024 employment agreement contains the language quoted in Paragraph 49. Defendants admit that Section 6.4 of St. John's 2022 employment agreement and Section 6.4 of Ramon's employment agreement contain the language quoted in the second sentence of Paragraph 49 and, in their first sentences, a list of items that differs from the list quoted in Paragraph 49. Defendants refer the Court to the employment agreements

for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 49.

50. Defendants admit that Section 7 of each of Defendants' employment agreements is titled "Inventions" and contains the language quoted in Paragraph 50, except that the Agreements read "mask works," not "mask words," and the sentence that Paragraph 50 ends at "Inventions[.]" continues: "provided that such assignment does not apply to any invention which is not subject to assignment pursuant to applicable law." Defendants refer the Court to each of Defendants' employment agreements for their complete terms. The last sentence of Paragraph 50 states a legal conclusion to which no response is required; to the extent a response is required, Defendants deny it. Except as expressly admitted, Defendants deny the allegations in Paragraph 50.

51. Defendants admit that each of the employment agreements provides for an Exhibit A listing prior inventions, and refer the Court to the employment agreements for their complete terms. Defendants admit that St. John listed prior works on the Exhibit A to his 2024 employment agreement, and that Ramon listed no prior inventions on the Exhibit A to his employment agreement. Defendants deny that they misappropriated any code, software, or digital materials from Apollo. Except as expressly admitted, Defendants deny the allegations in Paragraph 51.

52. Defendants lack knowledge or information sufficient to form a belief about Apollo's expenditures, client relationships, and reliance on repeat business and referrals, and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 52.

53. Defendants lack knowledge or information sufficient to form a belief about what information is available to Apollo and about the condition of Apollo's current business, and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 53.

**FIRST CAUSE OF ACTION**

**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836 ET SEQ.**

**(Against St. John and Ramon)**

54. Defendants incorporate their responses to Paragraphs 1-53.

55. Defendants deny the allegations in Paragraph 55, except that, as to the matters also alleged in Paragraphs 13, 17, and 18, Defendants incorporate their responses to those paragraphs. The case citations and parentheticals in Paragraph 55 are legal argument to which no response is required.

56. Defendants deny that Apollo made reasonable efforts to maintain the secrecy of any trade secret. Defendants admit that they signed employment agreements with Apollo, and admit their terms to the extent stated in their responses to Paragraphs 2 and 46-51. Defendants admit that they used individual usernames and passwords to access Apollo's computer systems. Except as stated in their response to Paragraph 35, Defendants lack knowledge or information sufficient to form a belief about the measures described in subparagraphs (c)-(e) of Paragraph 56, and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 56. The case citation and parenthetical in Paragraph 56 are legal argument to which no response is required.

57. Defendants deny the allegations in Paragraph 57, except that, as to Apollo's market, competitors, and clients, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore deny them. The case citation and parenthetical in Paragraph 57 are legal argument to which no response is required.

58. Defendants deny the allegations in Paragraph 58.

59. Defendants admit that, in performing his job, St. John had access to Apollo systems and information. Except as expressly admitted, Defendants deny the allegations in Paragraph 59.

60. Defendants admit that, in performing his job, Ramon had access to Apollo systems and information. Except as expressly admitted, Defendants deny the allegations in Paragraph 60.

61. Defendants admit that Apollo provides cybersecurity services to businesses located in states other than Texas. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of Paragraph 61, and therefore deny them. The second sentence of Paragraph 61 states a legal conclusion to which no response is required; to the extent a response is required, Defendants deny it.

62. Defendants deny the allegations in Paragraph 62.

63. Defendants admit that Northumbria was connected to North Tools and Sultrani, that Northumbria is connected to St. John, and that Sultrani is associated with St. John. Except as expressly admitted, Defendants deny the allegations in Paragraph 63.

64. Defendants admit that DataSchism and CyberGestalt are connected to St. John, and admit the domain registrations to the extent stated in their response to Paragraph 26. Except as expressly admitted, Defendants deny the allegations in Paragraph 64.

65. Defendants deny the allegations in Paragraph 65.

66. Defendants admit that on December 10, 2025, St. John changed the login e-mail address, but not the password, of his personal 1Password account; that St. John possesses the login credentials for that account; and that, in performing their jobs, Defendants had access to Apollo systems and information. Defendants deny that St. John's personal 1Password account is or was Apollo's property or Apollo's "password locker," and deny that it contains any Apollo credential or confidential information. Defendants lack knowledge or information sufficient to form a belief about what Apollo has learned, and therefore deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 66.

67. Defendants deny the allegations in Paragraph 67.

68. Defendants admit the terms of Sections 6.2 and 6.3 of the cited employment agreements to the extent stated in their responses to Paragraphs 47-48. Except as expressly admitted, Defendants deny the allegations in Paragraph 68.

69. Defendants deny the allegations in Paragraph 69.

70. Defendants deny the allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants deny the allegations in Paragraph 72.

73. Defendants deny the allegations in Paragraph 73.

74. Defendants deny the allegations in Paragraph 74. The case citation and parenthetical in Paragraph 74 are legal argument to which no response is required.

75. Defendants lack knowledge or information sufficient to form a belief about Apollo's acquisition of another data collection company and its efforts to seek additional capital, and therefore deny those allegations. Defendants admit that Apollo purports to seek damages, and deny that Apollo is entitled to them. Defendants deny the remaining allegations in Paragraph 75.

76. Defendants deny the allegations in Paragraph 76.

77. Defendants deny the allegations in Paragraph 77.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against St. John and Ramon)**

78. Defendants incorporate their responses to Paragraphs 1-77.

79. Defendants admit that Section 2 of each of the cited employment agreements provides that "Apollo will employ the Employee on an at-will basis for an unspecified period of time," and admit the terms of Sections 6.2 and 6.3 to the extent stated in their responses to Paragraphs 47-48. Defendants refer the Court to the employment agreements for their complete terms. Except as expressly admitted, Defendants deny the allegations in Paragraph 79.

80. Defendants admit that Apollo employed each of them and that, in performing their jobs, they had access to Apollo systems and information. Except as expressly admitted, Defendants deny the allegations in Paragraph 80.

81. Defendants deny the allegations in Paragraph 81.

82. Defendants admit that Apollo has retained counsel. Paragraph 82's assertion that Apollo is entitled to attorney's fees and costs under Section 1717 of the California Civil Code states a legal conclusion to which no response is required; to the extent a response is required, Defendants deny it. Except as expressly admitted, Defendants deny the allegations in Paragraph 82.

**THIRD CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(Against St. John and Ramon)**

83. Defendants incorporate their responses to Paragraphs 1-82.

84. Defendants deny the allegations in Paragraph 84.

85. Defendants deny the allegations in Paragraph 85.

**FOURTH CAUSE OF ACTION**

**MONEY HAD AND RECEIVED**

**(Against St. John and Ramon)**

86. Defendants incorporate their responses to Paragraphs 1-85.

87. Defendants admit that St. John received the payments described in their responses to Paragraphs 23 and 25. Except as expressly admitted, Defendants deny the allegations in Paragraph 87.

88. Defendants deny the allegations in Paragraph 88.

89. Defendants deny the allegations in Paragraph 89.

**FIFTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against St. John and Ramon)**

90. Defendants incorporate their responses to Paragraphs 1-89.

LIMNEXUS LLP

91. The Court has dismissed the Fifth Cause of Action as to Ramon (Dkt. 82), and no response is required on his behalf. St. John admits that he served as Senior Director of Intelligence under his 2024 employment agreement, and refers the Court to Section 1 of that agreement for its terms. To the extent a response is required, and except as expressly admitted, Defendants deny the allegations in Paragraph 91.

92. The Court has dismissed the Fifth Cause of Action as to Ramon (Dkt. 82), and no response is required on his behalf. To the extent a response is required, and as to St. John, Defendants deny the allegations in Paragraph 92.

93. The Court has dismissed the Fifth Cause of Action as to Ramon (Dkt. 82), and no response is required on his behalf. To the extent a response is required, and as to St. John, Defendants deny the allegations in Paragraph 93.

**SIXTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

**(Against St. John and Ramon)**

94. Defendants incorporate their responses to Paragraphs 1-93.

95. Defendants deny the allegations in Paragraph 95.

96. Defendants deny the allegations in Paragraph 96.

97. Defendants deny the allegations in Paragraph 97.

98. Defendants deny the allegations in Paragraph 98.

**SEVENTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

**(Against St. John and Ramon)**

99. Defendants incorporate their responses to Paragraphs 1-98.

100. Paragraph 100 states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that an actual controversy exists between Apollo and St. John concerning the ownership of

LIMNEXUS LLP

Northumbria, DataSchism, and CyberGestalt. Except as expressly admitted, Defendants deny the allegations in Paragraph 100.

101. Defendants aver that Northumbria, DataSchism, and CyberGestalt are each the result and culmination of work identified on Exhibit A to St. John's 2024 employment agreement, and on that basis deny that their subject matter was made or conceived during the term of either Defendant's employment with Apollo within the meaning of Section 7 of the employment agreements. The remainder of Paragraph 101 states legal conclusions to which no response is required; to the extent a response is required, Defendants deny them. Defendants deny the remaining allegations in Paragraph 101.

102. Paragraph 102 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 102.

103. Defendants admit that St. John claims ownership of Northumbria, DataSchism, and CyberGestalt doing business as Sultrani. Except as expressly admitted, Defendants deny the allegations in Paragraph 103.

104. Defendants admit that Apollo purports to seek the relief described in Paragraph 104, and deny that Apollo is entitled to it.

**PRAYER**

Defendants deny that Apollo is entitled to any of the relief requested in its Prayer, or to any relief.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

Defendants assert the following defenses. By pleading a matter as a defense, Defendants do not assume any burden of proof that the law places on Apollo, including on the existence, ownership, secrecy, and misappropriation of any alleged trade secret.

**FIRST DEFENSE**

**(License, Consent, and Authorization)**

Apollo's claims are barred, in whole or in part, because Apollo licensed, consented to, and authorized the conduct of which it complains. In December 2024, Dave Tyson, Apollo's Chief Information Security Officer, initiated a formal product evaluation to replace Apollo's threat-intelligence platform; Northumbria was submitted in that evaluation, and Tyson selected it. On March 13, 2025, with Tyson's approval, Apollo's staff purchased an annual "Swan Hunter" subscription to Northumbria through the northtools.org website, using Apollo's purchasing account and an Apollo credit card, on a charge that, as Apollo itself alleges, showed St. John's business, Sultrani, as the merchant. The subscription gave Apollo access to Northumbria's private code repository and the right to fork the code and develop a private, local version of Northumbria. DataSchism and CyberGestalt were among the products that Apollo personnel proposed and discussed at an October 2025 meeting in Dallas to prepare Apollo's third-party-risk product for a December 2, 2025 deadline set by John Watters; Watters approved them at that meeting, and they were then evaluated with Tyson and submitted to Apollo's accounting department. Neither St. John nor Ramon had authority or the means to purchase software for Apollo; Apollo personnel made each of these purchases after Apollo's own review. On November 13, 2025, Apollo's Manager of Cyber Threat Intelligence, Sarah Parker, purchased a new 1Password account for Apollo, at Apollo's expense. From November 24 to December 1, 2025, St. John worked with Parker to transfer the vaults holding credentials used for Apollo work into that account; Apollo's analysts had access to the transferred vaults by December 1, 2025, Apollo's Director of Technical Operations, Sam Stover, was given access to them on December 4, 2025, and Apollo employees used them through December 23, 2025. On December 4, 2025, at Parker's direction, the KeLa account held by iCounter was assigned to Max Tomayko.

LIMNEXUS LLP

**SECOND DEFENSE**

**(Ratification and Acceptance of Benefits)**

Apollo's Third, Fourth, and Fifth Causes of Action are barred, in whole or in part, because Apollo, with knowledge of the material facts, accepted and retained the benefits of the transactions of which it complains and thereby ratified them. Apollo used Northumbria under the rights it purchased, built its own Intelligence Management Platform on it, and has not returned or offered to return any of those benefits. Apollo may not retain the benefits of those transactions while recovering their price. Cal. Civ. Code §§ 1589, 1691, 2307, 2310, 3521.

**THIRD DEFENSE**

**(Waiver, Estoppel, and Acquiescence)**

Apollo's claims are barred, in whole or in part, by waiver, estoppel, and acquiescence. Apollo bought Northumbria, DataSchism, and CyberGestalt, and accepted their benefits, knowing that the Northumbria invoice was issued by St. John's business, Sultrani. Apollo, through Parker, also participated in the transfer of the credential vaults and directed the assignment of the KeLa account described in the First Defense, and Defendants acted in reliance on that participation and direction.

**FOURTH DEFENSE**

**(Displacement by Trade-Secret Statute)**

Apollo's Third, Fourth, Fifth, and Sixth Causes of Action are displaced, in whole or in part, to the extent they rest on the same nucleus of facts as Apollo's claim of trade-secret misappropriation. That includes Apollo's allegations that Defendants obtained information through Apollo's subscriptions and sold it back to Apollo, that St. John retained or controlled Apollo credentials or data, and that Defendants used Apollo information to build competing products, all of which Defendants deny. Cal. Civ. Code § 3426.7(b); in the alternative, RCW 19.108.900.

**FIFTH DEFENSE**

**(Voluntary Payment)**

Apollo's Third and Fourth Causes of Action, and any claim to recover amounts Apollo paid, are barred because Apollo paid for Northumbria, DataSchism, and CyberGestalt voluntarily, without duress or compulsion, after Apollo's own selection and review of each product, and paid for Northumbria knowing that the invoice Apollo received was issued by St. John's business, Sultrani.

**SIXTH DEFENSE**

**(Express Contract)**

Apollo's Third and Fourth Causes of Action are barred to the extent express agreements, including the terms on which Apollo purchased Northumbria, DataSchism, and CyberGestalt, govern the same subject matter. Apollo has not rescinded those agreements or restored the benefits it received under them.

**SEVENTH DEFENSE**

**(Payment, Setoff, and Recoupment)**

Any recovery by Apollo is barred or must be reduced by payment, setoff, and recoupment, including St. John's refund, at Apollo's request, of the full $50,000 charged to Apollo's card when its Northumbria subscription renewed on March 13, 2026, the value Apollo received from Northumbria, DataSchism, and CyberGestalt, and any amounts Apollo owes St. John. Cal. Code Civ. Proc. § 431.70; Cal. Civ. Code § 1692.

**EIGHTH DEFENSE**

**(Real Party in Interest and Ownership)**

In the alternative, Apollo may not recover for injuries to, or payments made by, iCounter, which is the real party in interest as to the assets, accounts, and payments it held or made, including the KeLa account and the DataSchism and CyberGestalt invoices, which were billed to iCounter. To the extent any alleged

trade secret, account, or payment belongs to iCounter, Apollo is not its "owner" under 18 U.S.C. §§ 1836(b)(1) and 1839(4) and is not the real party in interest. Apollo did not identify iCounter in its certification under Civil L.R. 3-15. Defendants object under Fed. R. Civ. P. 17(a)(3).

**NINTH DEFENSE**

**(Failure to Satisfy a Condition Precedent)**

Apollo's claims are barred, or must be stayed, because Apollo did not satisfy a condition precedent to suit. Section 15 of St. John's 2024 employment agreement, Section 14 of his 2022 employment agreement, and Section 14 of Ramon's employment agreement provide that, "[i]n the event a dispute arises between them, the parties shall first attempt to resolve the dispute by participating in mediation with a mutually acceptable mediator," and permit litigation only "[i]n the event that the parties fail to resolve their dispute through mediation." The provision contains no exception for provisional relief. Apollo did not propose a mediator, request mediation, or participate in mediation before filing this action, and Defendants invoked the provision in opposing Apollo's motion for a temporary restraining order (Dkt. 28 at 6, 24-25). Defendants specifically deny that this condition precedent was performed or excused. Fed. R. Civ. P. 9(c). St. John asserts his counterclaims without waiving this condition.

**TENTH DEFENSE**

**(Prior Works and Statutory Limits on Assignment)**

Apollo's Second and Seventh Causes of Action, and its claims of ownership, are barred in whole or in part because Section 7 of each employment agreement reaches only inventions "made or conceived by the Employee . . . during the term of the Employee's employment with Apollo," and "does not apply to any invention which is not subject to assignment pursuant to applicable law." Cal. Lab. Code § 2870; RCW 49.44.140. St. John listed on Exhibit A to his 2024 employment agreement hundreds of works that he identified as his own prior and independent

works, and Northumbria, DataSchism, and CyberGestalt are the result and culmination of, and incorporate, works listed there.

**ELEVENTH DEFENSE**

**(Limits on Injunctive Relief)**

Apollo is not entitled to injunctive relief that would prevent Defendants from engaging in a lawful profession, trade, or business, or that rests on the information Defendants know rather than on evidence of threatened misappropriation, including the relief sought in Paragraph 6(a) of the Prayer. 18 U.S.C. § 1836(b)(3)(A)(i)(I)-(II); Cal. Bus. & Prof. Code § 16600; RCW 49.62.

**TWELFTH DEFENSE**

**(Failure to Mitigate)**

Any recovery must be reduced to the extent Apollo failed to mitigate its alleged damages. Apollo received the transferred vaults before St. John resigned, its employees used them during December 1-23, 2025, other Apollo personnel had backup access to the systems St. John was responsible for, and on December 23, 2025, Apollo terminated six members of its intelligence team.

**THIRTEENTH DEFENSE**

**(Unclean Hands)**

Apollo's claims for equitable relief, including injunctive and declaratory relief, a constructive trust, and restitution, are barred by unclean hands. Apollo selected, purchased, and used the products it now says Defendants deceptively sold it, and it seeks both to keep their benefits and to recover their price. Apollo also sought emergency relief on the premise that St. John had locked it out of a "password locker," after the vaults holding credentials used for Apollo work had been transferred to an account Apollo controlled and Apollo's Director of Technical Operations had confirmed his access to them.

**FOURTEENTH DEFENSE**

**(Limits on Exemplary and Punitive Damages)**

Apollo is not entitled to exemplary or punitive damages. Defendants did not act willfully or maliciously, or with oppression, fraud, or malice. Any such award would also be limited by applicable state law and the Due Process Clause.

**FIFTEENTH DEFENSE**

**(No Double Recovery)**

Apollo may not recover more than once for the same alleged injury under its trade-secret, contract, quasi-contract, and money-had-and-received theories.

**SIXTEENTH DEFENSE**

**(No Legally Protected Trade Secret)**

Apollo's First Cause of Action fails because the information Apollo claims is not a trade secret within the meaning of 18 U.S.C. § 1839(3). Apollo has not identified any information that meets that definition.

**SEVENTEENTH DEFENSE**

**(Readily Ascertainable)**

The information Apollo claims is generally known or readily ascertainable through proper means by others who could obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3)(B). Apollo alleges that the commercial intelligence collection data on which it relies is sold by commercial providers to subscribers who qualify as cybersecurity providers (FAC ¶ 17).

**EIGHTEENTH DEFENSE**

**(No Independent Economic Value)**

The information Apollo claims does not derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3)(B).

LIMNEXUS LLP

**NINETEENTH DEFENSE**

**(Independent Conception and Derivation)**

Northumbria, DataSchism, and CyberGestalt were independently conceived and developed by St. John and are the result and culmination of work identified on Exhibit A to his 2024 employment agreement, not of any Apollo trade secret. Independent derivation is not improper means. 18 U.S.C. § 1839(6)(B).

**TWENTIETH DEFENSE**

**(No Reasonable Measures to Keep Secret)**

Apollo did not take reasonable measures to keep the information it claims secret. 18 U.S.C. § 1839(3)(A). Among other things, from 2022 until November 2025, Apollo allowed credentials used for Apollo work to be held in St. John's personal password manager rather than in any account Apollo owned or controlled, and Apollo did not purchase its own 1Password account until November 13, 2025.

**TWENTY-FIRST DEFENSE**

**(No Misappropriation)**

Defendants did not misappropriate any trade secret. 18 U.S.C. § 1839(5). Any Apollo information Defendants had, they acquired properly in the course of their employment; they returned or transferred it to Apollo, including by transferring the vaults holding credentials used for Apollo work to Apollo's own 1Password account between November 24 and December 1, 2025; and they have not used or disclosed it since their employment ended.

**TWENTY-SECOND DEFENSE**

**(Copyright Preemption)**

Apollo's Third, Fourth, and Sixth Causes of Action are preempted, in whole or in part, to the extent they rest on the reproduction, adaptation, distribution, or use of software or other works of authorship. 17 U.S.C. § 301(a).

LIMNEXUS LLP

## DEFENDANTS' PRAYER FOR RELIEF

Defendants request that Apollo take nothing by its First Amended Complaint; that judgment be entered in Defendants' favor on each of Apollo's claims; that Defendants be awarded their costs and, upon motion, their reasonable attorneys' fees as permitted by law, including under 18 U.S.C. § 1836(b)(3)(D); and that the Court grant such further relief as it deems just.

## COUNTERCLAIMS OF MONTY ST. JOHN

Defendant and Counterclaimant Monty St. John ("St. John") alleges the following counterclaims against Plaintiff and Counterclaim-Defendant Apollo Information Systems Corp. ("Apollo"):

## PARTIES

1. St. John is an individual who resides in Clark County, Washington, and is a citizen of Washington.

2. Apollo is a Texas corporation with its principal place of business in Dallas, Texas.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over these counterclaims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Apollo's claims. St. John seeks declaratory relief under 28 U.S.C. §§ 2201-2202.

4. The Court also has jurisdiction under 28 U.S.C. § 1332(a)(1) because St. John is a citizen of Washington, Apollo is a citizen of Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Apollo is subject to personal jurisdiction in this District, and venue is proper here, because Apollo filed this action in this District.

## FACTUAL BACKGROUND

### A. St. John and Sultrani

6. St. John is a cybersecurity professional with more than twenty years of experience. Since 2015, he has operated a cybersecurity consulting, training, and publishing business as a sole proprietor under the name Sultrani.

7. Cyber Defenses, Inc. ("CDI") employed St. John from March 2017 until September 23, 2021, with the understanding that he would continue to operate Sultrani, and CDI continued to contract for his consulting services until June 2022. In September 2017, St. John granted CDI a non-exclusive license to certain of his training courses.

### B. St. John's Employment with Apollo

8. Apollo hired St. John as Director of Intelligence on a part-time basis, effective June 1, 2022, under a written employment agreement executed on June 3, 2022, that set his schedule at 60 hours of work per month (the "2022 Agreement"), with the understanding that he would continue to operate Sultrani. Effective January 1, 2024, St. John and Apollo entered into a second written employment agreement, under which he served as Senior Director of Intelligence (the "2024 Agreement"). The 2024 Agreement attaches an Exhibit A listing software, scripts, training courses, and other works that St. John identified as his own prior and independent works.

9. St. John performed his work for Apollo from Texas until July 2024, and from Washington thereafter.

10. Throughout St. John's employment, Apollo separately contracted with and paid Sultrani for services, under an arrangement administered by Dave Tyson, Apollo's Chief Information Security Officer. Apollo's management and finance personnel knew of St. John's association with Sultrani.

**C. Apollo Selects and Buys Northumbria, DataSchism, and CyberGestalt**

11. In December 2024, Northumbria, a threat-intelligence platform that St. John owns through Sultrani, was submitted in a formal product evaluation that Tyson initiated to replace Apollo's threat-intelligence platform, and Tyson selected it.

12. On March 13, 2025, Apollo purchased an annual "Swan Hunter" subscription to Northumbria for $50,000 through the northtools.org website, on an invoice that Sultrani issued to Apollo. The subscription gave Apollo access to Northumbria's private code repository and the right to fork the code and develop a private, local version of Northumbria. Apollo built its own Intelligence Management Platform on Northumbria under the rights it purchased.

13. In 2025, Apollo was developing a third-party-risk product. Executive Chairman John Watters set a December 2, 2025 deadline for that product. At meetings in Dallas on October 22 and 23, 2025, more than a dozen Apollo personnel proposed and discussed products to meet that deadline, and Watters approved or rejected each one. Watters approved DataSchism and CyberGestalt. They and several other approved products were then evaluated with Tyson and submitted to Apollo's accounting department. St. John had no authority or means to purchase software for Apollo; Apollo personnel made each purchase after Apollo's own review. On November 4, 2025, CyberGestalt invoiced iCounter for both subscriptions, and the invoices were paid.

**D. Apollo Claims St. John's Work as Its Own**

14. In this action, Apollo contends that it owns Northumbria, DataSchism, and CyberGestalt, and asks the Court to declare that ownership, to order their assignment to Apollo, and to impose a constructive trust over them. St. John disputes each contention.

15. Section 7 of each of the 2022 Agreement and the 2024 Agreement assigns to Apollo only inventions "made or conceived by the Employee, either



LIMNEXUS LLP

alone or in conjunction with others, during the term of the Employee's employment with Apollo" that meet one of three conditions, and provides that the assignment "does not apply to any invention which is not subject to assignment pursuant to applicable law."

16. Exhibit A to the 2024 Agreement lists hundreds of works that St. John identified as his own prior and independent works, including software tools, scripts, YARA modules, automation notebooks, training courses, frameworks, and seminars. Northumbria, DataSchism, and CyberGestalt are the result and culmination of, and incorporate, works listed on Exhibit A.

**E. St. John's Disability and Apollo's Knowledge of It**

17. St. John has multiple sclerosis. Apollo has known of his condition since at least November 2023, when he experienced a multiple-sclerosis event while employed by Apollo. On that occasion, Apollo allowed him to rest at home and then to work half days through most of December 2023.

**F. Apollo's Response to St. John's November 2025 Medical Event**

18. On November 13, 2025, St. John experienced another multiple-sclerosis event. His physician directed him to rest completely, in as low-stress an environment as possible, for at least one week, followed by a reduced schedule.

19. On November 14, 2025, St. John informed Tyson of the event, relayed his physician's instructions, and told him that he would be resting and working half days during at least the following week. Tyson told him to rest and to keep Apollo updated.

20. Beginning November 17, 2025, Apollo personnel pulled St. John into meetings and calls, sent him a steady stream of messages and meeting requests, and pressed him to meet a December 2, 2025 deadline for Apollo's third-party-risk product. Many of those meetings were scheduled without coordinating with St. John, often at the last minute. Apollo personnel demanded audits of software, purchases, and program details, blamed him for other employees' work on a client

engagement, and treated any message he did not answer quickly as a lack of commitment. Almost every day from November 17 to December 5, 2025, Watters, Apollo's Director of Technical Operations Sam Stover, and Dan Kropp made remarks expressing displeasure with St. John's absences during his medical leave, particularly when he did not attend meetings they had scheduled without coordinating with him. Scott Schneider did the same when St. John did not join a sales call for which Schneider had sent a last-minute, uncoordinated meeting request.

21. No one at Apollo discussed with St. John what leave, schedule, or change in duties his condition required, and Apollo did not provide the leave or reduced schedule his physician prescribed.

22. Between November 24 and December 1, 2025, St. John worked with Apollo's Sarah Parker to transfer the vaults holding credentials and information used for Apollo work from his personal password manager to a new 1Password account that Parker had purchased for Apollo on November 13, 2025, at Apollo's expense, and removed them from his own account. Parker had full access to the transferred vaults by December 1, 2025.

23. On or about November 26, 2025, St. John told Watters and Tyson that he had suffered a multiple-sclerosis episode and that his health was deteriorating. On November 26 or 27, 2025, Stover sent St. John an e-mail stating that Watters had "directed and authorized" Stover to obtain information, access, and demonstrations covering the third-party-risk product and the intelligence team.

24. During December 2-4, 2025, Stover questioned St. John in three video conferences, which Stover recorded in whole or in part, about Apollo assets and operations. Stover confirmed his own access to the transferred vaults on December 4, 2025.

25. By December 5, 2025, St. John needed a month or more of rest, and Apollo's conduct had made clear that it would not allow it. A reasonable person in

his position would have felt compelled to resign. St. John resigned that day because of those conditions. On December 10, 2025, Watters referred to St. John's departure as his "ADA resignation."

26. As a result of Apollo's conduct, St. John lost the salary and benefits of his employment and suffered emotional distress and aggravation of his multiple sclerosis.

**FIRST COUNTERCLAIM**

**Declaratory Judgment of Ownership and Non-Assignment, 28 U.S.C. §§ 2201-2202 (St. John Against Apollo)**

27. St. John incorporates paragraphs 6-16 of these Counterclaims.

28. An actual, substantial, and justiciable controversy exists between St. John and Apollo concerning ownership of Northumbria, DataSchism, CyberGestalt, the works listed on Exhibit A to the 2024 Agreement, and versions of those products developed after St. John's employment with Apollo ended. Apollo claims to own Northumbria, DataSchism, and CyberGestalt, together with "any related Inventions," and seeks an order compelling their assignment and a constructive trust over them. Apollo's claims cloud St. John's title and impair his present ability to use, license, and sell his work. The Court has jurisdiction over this counterclaim under 28 U.S.C. § 1332(a)(1), independent of Apollo's claims, and the counterclaim can remain pending for independent adjudication under Fed. R. Civ. P. 41(a)(2).

29. No employment agreement between St. John and Apollo assigned to Apollo any work listed on Exhibit A to the 2024 Agreement, or any interest in Northumbria, DataSchism, or CyberGestalt to the extent they consist of or incorporate those works. To the extent Section 7 of either agreement would otherwise reach any of them, its proviso and applicable law, including Cal. Lab. Code § 2870 and RCW 49.44.140, exclude it. The data used in DataSchism and CyberGestalt was collected through St. John's own accounts, not through any

Apollo account or subscription. Nothing St. John developed after his employment with Apollo ended on December 5, 2025 is within Section 7 of either agreement. Apollo's rights in Northumbria are limited to the non-exclusive rights it purchased.

30. St. John seeks a declaration that (a) Apollo has no ownership interest, sole or joint, in any work listed on Exhibit A to the 2024 Agreement, including as incorporated in Northumbria, DataSchism, or CyberGestalt; (b) no employment agreement between St. John and Apollo assigned any such work to Apollo; (c) Apollo has no ownership interest in any work, including any version of Northumbria, DataSchism, or CyberGestalt, that St. John developed after December 5, 2025, except to the extent it incorporates material that Apollo owns; (d) St. John may use, license, and commercialize those works; (e) Apollo's rights in Northumbria are limited to the rights it purchased; and (f) Apollo is not entitled to control the prosecution of any patent application claiming those works or to a constructive trust over them.

**SECOND COUNTERCLAIM**

**Failure to Accommodate, Washington Law Against Discrimination, RCW 49.60.180 (St. John Against Apollo)**

31. St. John incorporates paragraphs 6, 8-9, and 17-26 of these Counterclaims.

32. Apollo is an employer under RCW 49.60.040(11) because it employs eight or more persons.

33. St. John has a disability under RCW 49.60.040(7). After his November 13, 2025 event, his multiple sclerosis had a substantially limiting effect on his ability to perform his job.

34. St. John gave Apollo notice of his impairment, relayed his physician's instructions that he rest completely, in as low-stress an environment as possible, for at least one week, followed by a reduced schedule, and told Apollo that he needed to rest and to work half days.



LIMNEXUS LLP

35. With a temporary leave and reduced schedule, St. John could have performed the essential functions of his position, as he did after Apollo provided similar accommodation in 2023.

36. Apollo failed to take steps reasonably available to accommodate St. John's disability and did not engage with him to identify an accommodation.

37. As a direct and proximate result, St. John suffered damages, including lost wages and benefits, emotional distress, and aggravation of his condition, and he is entitled to actual damages and reasonable attorneys' fees and costs under RCW 49.60.030(2).

## THIRD COUNTERCLAIM

### Wrongful Discharge Because of Disability, Washington Law Against Discrimination, RCW 49.60.180(2)-(3) (St. John Against Apollo)

38. St. John incorporates paragraphs 6, 8-9, and 17-26 of these Counterclaims.

39. Apollo deliberately made St. John's working conditions intolerable because of his disability, including by requiring him to work through his prescribed recovery and pressing him to meet a product deadline during it; by remarks, almost every day from November 17 to December 5, 2025, expressing displeasure with his absences during his medical leave; and by subjecting him to accusatory questioning about assets he had already transferred to Apollo.

40. A reasonable person in St. John's position would have felt compelled to resign, and St. John resigned because of those conditions. Apollo thereby constructively discharged him.

41. Apollo's constructive discharge of St. John was a wrongful discharge because of his disability, in violation of RCW 49.60.180(2), and Apollo discriminated against him in the terms and conditions of his employment because of his disability, in violation of RCW 49.60.180(3).

42. St. John is entitled to actual damages and reasonable attorneys' fees and costs under RCW 49.60.030(2).

**FOURTH COUNTERCLAIM**

**Hostile Work Environment Because of Disability, Washington Law Against Discrimination, RCW 49.60.180(3) (St. John Against Apollo)**

43. St. John incorporates paragraphs 6, 8-9, and 17-26 of these Counterclaims.

44. From November 17 to December 5, 2025, Apollo subjected St. John to unwelcome harassment because of his disability, including remarks, almost every day, by its Executive Chairman, its Director of Technical Operations, and other managers expressing displeasure with his absences during his medical leave, and accusatory questioning about assets he had already transferred to Apollo.

45. The harassment was sufficiently severe and pervasive to alter the terms and conditions of St. John's employment.

46. The harassment is imputed to Apollo because it was committed by Apollo's senior management, including its Executive Chairman, and because Apollo knew of it and took no corrective action.

47. As a direct and proximate result, St. John suffered damages, including emotional distress and aggravation of his condition, and he is entitled to actual damages and reasonable attorneys' fees and costs under RCW 49.60.030(2).

**PRAYER FOR RELIEF**

Wherefore, St. John requests that the Court:

(a) enter the declarations requested in paragraph 30 of these Counterclaims;

(b) award St. John actual damages under RCW 49.60.030(2), including back pay, front pay, lost benefits, and damages for emotional distress and aggravation of his condition, together with an amount to offset the adverse tax consequences of a lump-sum award, in an amount to be proven at trial;

(c) award St. John his reasonable attorneys' fees and costs under RCW 49.60.030(2);

(d) award pre- and post-judgment interest;

(e) award St. John his costs under Fed. R. Civ. P. 54(d); and

(f) grant such further relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Under Fed. R. Civ. P. 38 and Civil L.R. 3-6, Defendants and Counterclaimant demand a trial by jury on all issues so triable.

Dated: October 13, 2026

LimNexus LLP

By: ______________________

Attorneys for Defendants
MONTY ST. JOHN and
REYNALDO RAMON, and
Counterclaimant MONTY ST. JOHN

LimNexus LLP